UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | | |
|---|---|---|
| TERESI INVESTMENTS III, a California Limited Partnership, | ) ) ) | Case No.: 5:10-CV-04714 EJD |
| Plaintiff, | ) ) ) | **ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT** |
| v. | ) ) | |
| CITY OF MOUNTAIN VIEW, a Municipal Corporation, and DOES 1–10, inclusive, | ) ) ) | **[Re: Docket No. 38]** |
| Defendants. | ) | |

Plaintiff Teresi Investments, III, a California Limited Partnership ("Plaintiff" or "Teresi") has brought an action seeking damages against Defendant, the City of Mountain View ("Defendant" or "the City"), pursuant to 42 U.S.C. § 1983. Presently before the Court is Defendant's Motion for Summary Judgment, on which the Court held a hearing on September 28, 2012. Having fully considered the parties' submissions and arguments, the Court GRANTS Defendant's Motion for Summary Judgment.

**1. Background**

This action involves a dispute between a building developer (Plaintiff) and the City. City officials denied Plaintiff construction permits, ordered Plaintiff to cease renovation and construction plans, and disconnected water service to the site in question, among other actions. It is

1

Case No.: 5:10-CV-04714 EJD
ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

Plaintiff's contention—and the foundation of Plaintiff's claims—that these and other acts have amounted to violations of the Due Process and Equal Protection Clauses of the Fourteenth Amendment to the U.S. Constitution.

### 1.1   Factual Background

Plaintiff is a California limited partnership that formerly owned property located at 291 Evandale in Mountain View, California (hereinafter "the property" or "the subject property"). Am. Compl. ¶ 1. An apartment complex was located on the subject property which has also been known as the Summer Hill Apartments. On December 12, 2006, the City of Mountain View City Council ("City Council") conditionally approved a plan to demolish the apartment complex and to construct a 144-unit condominium complex in its place. See id. ¶ 7; Def.'s Request for Judicial Notice in Supp. of Mot. for Summ. J. ("Def.'s RJN"), Exs. B, C.

By January 2008, all of the Summer Hill Apartment tenants had relocated, and the property was fenced off and boarded up. In February 2008 city water service to the subject property was discontinued. Decl. of Maryanne Achterberg in Supp. of Def.'s Mot. for Summ. J. ¶¶ 6–8 & Exs. A, B. In addition, in March 2008, with Plaintiff's permission, the subject property was used for SWAT Team training, which included the detonation of several explosive charges placed throughout the property. Decl. of Chris Hsiung in Supp. of Def.'s Mot. for Summ. J. ¶¶ 2–6.

The redevelopment project, however, faced an obstacle, namely in the form of funding problems. Around July 15, 2008, Salvatore Caruso ("Caruso"), a developer working with and on behalf of Plaintiff, contacted former City of Mountain View City Attorney Michael Martello ("Martello") and expressed concerns about obtaining funding for the project. Decl. of Michael Martello in Supp. of Def.'s Mot. for Summ. J. ¶¶ 4–5, Ex. A. Caruso also inquired about an extension for the permit, which was set to expire on December 12, 2008. Id. By August, Plaintiff began seeking to reactivate the residential use of the property until it could proceed with the redevelopment. Norman Matteoni ("Matteoni"), Plaintiff's counsel in this action, exchanged emails and letters with Martello inquiring whether Plaintiff could reactivate the property for residential

2

Case No.: 5:10-CV-04714 EJD
ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

use until the overhaul project could commence once funding was secured. See Decl. of Salvatore Caruso in Supp. of Pl.'s Opp'n to Def.'s Mot. for Summ. J., Exs. B, C. No definitive answer was given by Martello as to these inquiries. Id.

Martello had visited the property on several occasions around this time and concluded that, given the property's condition, it would, at a minimum, need to be inspected before permits could be issued to make the property habitable again. See id., Ex. F. This assessment was communicated to Matteoni via email as well as during a meeting between City officials and Plaintiff's representatives that took place on August 18, 2008. Id.; Martello Decl. ¶ 14. At this meeting, the City officials also explained to Plaintiff's representatives that Development Review was required for the proposed renovation project due to the extent of the changes to the property since it was last inhabited by tenants. Id. Additionally, the City officials denied Plaintiff's request to reestablish water service to the property. Id.

On October 17, 2008 and October 27, 2008, JNSJ Roofing Inc. submitted an online application for a re-roofing permit for the subject property through the City's e-permit system on behalf of Plaintiff. Decl. of Shellie Woodworth in Supp. of Def.'s Mot. for Summ. J. ¶¶ 16–17. By the time these applications were submitted, Plaintiff had not scheduled a property inspection or submitted its renovation plans for Development Review. Martello Decl. ¶ 28. On October 28, a stop-work notice was issued as to the subject property because it had become apparent to City officials that Plaintiff had begun renovation earlier in the month. See Martello Decl. ¶¶ 17, 28. On October 29, 2008, the re-roofing permit applications were cancelled. Woodworth Decl. ¶¶ 4–7, 18.

During the week of November 17, 2008, City building inspectors conducted an inspection of the subject property. They summarized their findings in a Code Inspection Report dated December 1, 2008, which outlined all of the problems with the property that fell short of various building code sections. See Caruso Decl., Ex. N. On December 9, 2008, City officials again met with Plaintiff's representatives; the officials explained that Development Review was required before renovation of the property or reactivation of residential use could be approved. Martello Decl. ¶ 24.

3
Case No.: 5:10-CV-04714 EJD
ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

On December 16, 2008, Martello discovered that water service had been mistakenly reestablished at the subject property. Martello Decl. ¶ 25. On that same date he directed that the water service be disconnected. Id.

In March 2009, Plaintiff retained AEI Consultants to conduct a habitability survey, a property condition assessment, and a preliminary mold and moisture survey for the subject property. Declaration of Randy Tsuda in Supp. of Def.'s Mot. for Summ. J. ¶ 28. AEI Consultants' report gave the assessment that the property was in "poor" overall condition. Id., Ex. C at ii. The report was inconclusive as to whether the property was in compliance with building and fire codes. Id., Ex. C at i.

On August 21, 2009, Plaintiff submitted another application for a re-roofing permit for the subject property through the City's e-permit system. Woodworth Decl. ¶ 20. By this date Development Review of the site had not been conducted or scheduled. On August 25, 2009, this re-roofing permit application was cancelled. Id. ¶ 21. Plaintiff filed an appeal of this cancellation with the City Council on August 21; a public hearing regarding this appeal was held on October 27, 2009. Def.'s RJN, Ex. D. After consideration of this evidence, the City Council adopted Resolution 17440, which upheld the City officials' cancellation of the permit application. See id.

The subject property was subsequently sold to a new owner, Bay West. The new owner was granted building permits after it submitted its renovation plans through the City's Development Review process. See Def.'s RJN Exs. F–H.

### 1.2   Procedural History

On October 4, 2010, Plaintiff filed a Complaint against the City in Santa Clara County Superior Court. See Notice of Removal, Docket Item No. 1, Ex. A. The City removed the action to this Court on October 19, 2010 on the basis that this Court has original jurisdiction under 42 U.S.C. § 1331 as the complaint alleges violations of the Fourteenth Amendment to the U.S. Constitution and the causes of action arise under 42 U.S.C. § 1983. See 28 U.S.C. § 1441(b); Notice of Removal ¶¶ 3–5.

On June 7, 2011, Plaintiff filed an Amended Complaint with this Court. See Am. Compl., Docket Item No. 21. The Amended Complaint consists of two causes of action. In the First Cause of Action, Plaintiff asserts that Defendant's actions violated Plaintiff's rights under the Due Process Clause of the Fourteenth Amendment. In the Second Cause of Action, Plaintiff asserts that Defendant's conduct also constitutes a violation of the Fourteenth Amendment's Equal Protection Clause.

On July 12, 2011, the City issued its Answer to the Amended Complaint and also filed a Counterclaim against Plaintiff for breach of contract, violation of Mountain View municipal code, and quantum meruit. See Answer and Countercl., Docket Item No. 25.

On May 18, 2012, the City filed the present Motion for Summary Judgment. See Docket Item No. 38. Oral arguments before the Court took place on September 28, 2012. See Docket Item No. 65.

## 2. Standard of Review

A motion for summary judgment should be granted if "there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a); Addisu v. Fred Meyer, Inc., 198 F.3d 1130, 1134 (9th Cir. 2000). The moving party bears the initial burden of informing the court of the basis for the motion and identifying the portions of the pleadings, depositions, answers to interrogatories, admissions, or affidavits that demonstrate the absence of a triable issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). If the moving party meets this initial burden, the burden then shifts to the non-moving party to go beyond the pleadings and designate "specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e); Celotex, 477 U.S. at 324. The court must regard as true the opposing party's evidence, if supported by affidavits or other evidentiary material. Celotex, 477 U.S. at 324. However, the mere suggestion that facts are in controversy, as well as conclusory or speculative testimony in affidavits and moving papers, is not sufficient to defeat summary judgment. See Thornhill Publ'g Co. v. GTE Corp., 594 F.2d 730, 738 (9th Cir. 1979). Instead, the non-moving

5
Case No.: 5:10-CV-04714 EJD
ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

party must come forward with admissible evidence to satisfy the burden. Fed. R. Civ. P. 56(c); see also Hal Roach Studios, Inc. v. Feiner & Co., Inc., 896 F.2d 1542, 1550 (9th Cir. 1990).

A genuine issue for trial exists if the non-moving party presents evidence from which a reasonable jury, viewing the evidence in the light most favorable to that party, could resolve the material issue in his or her favor. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248–49 (1986); Barlow v. Ground, 943 F.2d 1132, 1134–36 (9th Cir. 1991). Conversely, summary judgment must be granted where a party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, on which that party will bear the burden of proof at trial." Celotex, 477 U.S. at 322.

**3. Discussion**

The City's conduct which underlies Plaintiff's Complaint consists essentially of the denials of the re-roofing permits and the discontinuation of the reconnected water service. Plaintiff contends that these actions have amounted to violations of its Due Process and Equal Protection rights under the Fourteenth Amendment. Defendant's Motion for Summary Judgment, on the other hand, argues that the City's actions have not risen to the level of Due Process or Equal Protection violations. The Court will herein address the Defendant's arguments and whether Plaintiff's causes of action can withstand summary judgment.

**3.1    Due Process**

Section 1 of the Fourteenth Amendment provides that no state shall "deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1. Plaintiff bases its First Cause of Action on both the procedural and substantive aspects of the Due Process Clause.

**3.1.1    Procedural Due Process**

To establish a § 1983 claim based on a violation of procedural due process, a plaintiff must establish (1) a protected liberty or property interest, and (2) a denial of adequate procedural

protection. Pinnacle Armor, Inc. v. United States, 648 F.3d 708, 716 (9th Cir. 2011). The fundamental requirement of procedural due process is the opportunity to be heard "at a meaningful time and in a meaningful manner." Mathews v. Eldridge, 424 U.S. 319, 333 (1976) (internal quotation marks and citation omitted). To determine whether the City provided Plaintiff adequate opportunity to be heard, the Court must balance: (1) the private interest that will be affected by the action; (2) the risk of an erroneous deprivation of that interest through the procedures used and the value of additional or alternative safeguards; and (3) the government's interest, including the additional costs and administrative burdens that additional procedures would entail. Buckingham v. Sec'y of U.S. Dep't of Agr., 603 F.3d 1073, 1081–82 (9th Cir. 2010) (citing Mathews, 424 U.S. at 335). "At bottom, the due process evaluation 'is flexible and calls for such procedural protections as the particular situation demands.'" Id. at 1083 (quoting Mathews, 424 U.S. at 334).

In applying the balancing test to the facts and issues of this case, the Court first recognizes that both the City and Plaintiff have significant interests at stake. While not making a determination on whether the re-roofing permit is a constitutionally protected property interest for Due Process Clause purposes, the Court recognizes that a real estate development and investment entity like Plaintiff has a strong interest in obtaining such permits so as to develop the property it owns or manages. At the same time, the Court also acknowledges the City's substantial interest in regulating construction and development projects as a matter of public safety. See Hodel v. Va. Surface Min. and Reclamation Ass'n, Inc., 452 U.S. 264, 300 (1981) ("Protection of the health and safety of the public is a paramount governmental interest which justifies summary administrative action. Indeed, deprivation of property to protect the public health and safety is [o]ne of the oldest examples of permissible summary action." (internal quotation marks omitted)).

With these interests in mind, the Court turns to the "the fairness and reliability of the existing . . . procedures, and the probable value, if any, of additional procedural safeguards." Mathews, 424 U.S. at 343. A review of record shows that the City's procedures for denying the re-roofing permits, as well as the pre- and post-deprivation processes that were afforded to Plaintiff, are fair. See Buckingham, 603 F.3d at 1084 (concluding that where a plaintiff is given adequate

7
Case No.: 5:10-CV-04714 EJD
ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

notice of the potential cancellation of a permit and the opportunity for post-cancellation review, the requirements for procedural due process has been satisfied).

The City of Mountain View Municipal Code (hereinafter "MVMC") refers to the Development Review process by which building construction and modification projects are assessed. See Def.'s RJN, Ex. J (listing code sections that illustrate the process which developers must undergo in order to proceed with construction and renovation projects). The Development Review process is part of the assessment of whether construction and residential use permits will be issued. Id. For example, the Code makes clear that "Development Review is required for all new construction, modifications to building exteriors or Development Sites, and changes in Land Use . . . ." MVMC § A36.52.020. The Code states that

> Development review can be a separate permit application or part of a larger permit application as described in this section. The zoning administrator shall have the overall authority to conduct development review, subject to appeal to the city council, but may refer applications to other community development department staff for review and issuance of permits.

MVMC § A36.52.040. Code sections like these indicate that when developers apply for permits through the procedures set forth in the Code, whether the project will be subject to Development Review is an issue left to the City's discretion. Id.; see also id. § A36.52.010 (describing the Development Review process as "discretionary" for the City to determine whether a proposed development project will, as an example, comply with city safety requirements and policies). The Code states that conditional permits may be issued subject to the results of the Development Review assessment. Id. § A36.52.040. And finally, the Code explicitly allows for decisions about Development Review or denials of construction permits are subject to appeal to the City Council. See id. Post-deprivation review is also available to parties also via a writ of mandate under California Code of Civil Procedure § 1094.6 as well as via a state law tort action.

In the case before the Court, Plaintiff's re-roofing permit application was twice denied or cancelled: in October 2008 and August 2009. The Court finds that, consistent with the aforementioned and other MVMC sections, Plaintiff was indeed afforded reasonable notice of the

8
Case No.: 5:10-CV-04714 EJD
ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

possible cancellation of the permits and a meaningful opportunity to be heard both before and after the cancellations.

Regarding the October 2008 cancellation: the undisputed facts in the record show that proper and fair procedures were followed in denying Plaintiff's permit applications. Before Plaintiff applied for the permit, City officials informed Plaintiff's representatives that due to the questionable status of the subject property and extent of the proposal to reactivate residential use, Development Review might be a necessary condition for the permit approval process. The following are examples of such communications:

- "[T]he real issue is probably whether the structure is nonconforming. . . . Until we visit the site, it is impossible to know for sure . . . . It is largely a factual inquiry at this point." Email from Martello to Matteoni dated Aug. 4, 2008 2:26 PM. Caruso Decl., Ex. A–G.
- "As to reactivating the property as a residential use, [i]t would, as a minimum need to be inspected and a determination made if we could even issue the permits to make it habitable again. If we can issue permits (repair vs rebuilding) and if it meets current zoning, the [City] Council may need to approve it." Email from Martello to Matteoni dated Aug. 11, 2008, 7:26 PM. Caruso Decl., Ex. F.
- At a meeting on August 18, 2008, Martello and other City representatives told Matteoni, Caruso, and other of Plaintiff's representatives that the subject property and project site would need to be reviewed and approved through the City's Development Review process before reactivation of residential use or the renovation project could commence. Martello Decl. ¶¶ 11–12. Martello also enumerated the problems with the property that posed safety hazards, the remedy of which would be necessary to pass Development Review. Id. ¶ 13. Matteoni acknowledged this discussion in a letter to Martello dated August 19, 2008. Id., Ex. C.

Before submitting applications for the re-roofing permits in October 2008, Plaintiff had not scheduled a property inspection or submitted its renovation plans in accordance with the Development Review procedure. Martello Decl. ¶ 28. Consistent with the permit authorization

9
Case No.: 5:10-CV-04714 EJD
ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

procedures and with the statements made by Martello and other City representatives, these permit applications were cancelled. Plaintiff did not challenge the permit application cancellation by appeal to the City Council despite having an opportunity to do so at its disposal.

With regard to the August 2009 cancellation, the facts in the record also show that Plaintiff and its representatives were given a meaningful opportunity to be heard. The following is a non-exhaustive list of facts taken from the record showing that Plaintiff was on notice that the subject property might still not pass Development Review, which would likely cause another permit application to be cancelled:

- The Code Inspection Report dated December 1, 2008 outlined all of the problems with the subject property discovered during a site inspection by city inspectors that took place during the week of November 17, 2008. See Caruso Decl. Ex. N.
- In a letter dated December 2, 2008, City of Mountain View Director of Community Development Randal R. Tsuda ("Tsuda") explained to Caruso that due to the various code violations discovered during the November inspection, the City required Plaintiff to undergo further site assessments and evaluations. Id., Ex. O. This letter also iterated Martello's assertion that Plaintiff would be required to undergo Development Review before permits could be issued. Id.
- On December 9, 2008, members of the City staff, including Martello and Tsuda, met with Caruso and other of Plaintiff's representatives. Martello Decl. ¶ 23; Tsuda Decl. ¶ 26. At this meeting, the City representatives explained that because changes had been made to the subject property since it was last inhabited, Development Review was required before the property could be safely re-occupied by residential tenants. Martello Decl. ¶ 24; Tsuda Decl. ¶ 27.

Again, before submitting its application for the re-roofing permits on August 21, 2009, Plaintiff did not arrange for its property to undergo Development Review. For similar reasons as the October 2008 cancellation, the City cancelled Plaintiff's second application for a re-roofing permit on August 25, 2009.

10

Case No.: 5:10-CV-04714 EJD
ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

After this cancellation, Plaintiff was afforded the meaningful opportunity to challenge the cancellation by appealing to the City Council. A public hearing of the appeal took place on October 27, 2009, where Plaintiff was able to present evidence in support of its appeal. See Decl. of John. F. Livingstone in Supp. of Pl.'s Opp'n to Mot. for Summ. J., Ex. F. After consideration of this evidence, the City Council adopted Resolution 17440 which upheld the City officials' cancellation of the permit application. See Def.'s RJN, Ex. D. The City Council explained that the rationale behind its affirmation included, but was not limited to, the following reasons: the property was uninhabitable and unsafe due to illegal modifications; significant exterior improvements were needed to make the units habitable again; and Plaintiff had failed to undergo the City's Development Review Process despite being informed that such a process was necessary. Id.

As for the disconnection of the water, Plaintiff contends that Martello's ordering of the water service to be discontinued was arbitrary and therefore in violation of its procedural due process rights. The Court disagrees. The water was reconnected in error after Plaintiff's requests for reconnection were denied by the City multiple times. The water was initially disconnected when the property was not in use and preparations for demolition and reconstruction were being made. Plaintiff's requests to re-activate the property for residential use were repeatedly denied after the City decided that reconnecting the water might lead to residential use of the property which had been determined to be unsafe for such residential use. There were no residents legally inhabiting the property at the time Martello made the decision to disconnect the erroneously-connected water supply. Accordingly this decision did not violate Plaintiff's due process rights. See Kawaoka v. City of Arroyo Grande, 17 F.3d 1227, 1237 (9th Cir. 1994).

In sum, viewing all the opportunities given to Plaintiff and its representatives to anticipate, challenge, and appeal the cancellation of the permits and the disconnection of the water, the Court cannot conclude that the City deprived Plaintiff of the meaningful opportunity to be heard. As such, the Court finds that there was no violation of procedural due process.

Because this Court concludes that the City complied with the due process requirement of adequate procedural protection, the Court will not reach the question of whether Plaintiff has a

11
Case No.: 5:10-CV-04714 EJD
ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

1  constitutionally protected property interest in obtaining the re-roofing permits or water service to
2  the property.

### 3.1.2   Substantive Due Process

The Constitution's substantive due process guarantee protects an individual from arbitrary government action. See Cnty. of Sacramento v. Lewis, 523 U.S. 833, 845–46 (1998). Substantive due process is violated by "executive abuse of power . . . which shocks the conscience." Id. at 846; accord Costanich v. Dep't of Soc. and Health Servs., 627 F.3d 1101, 1111 (9th Cir. 2010). "When executive action like a discrete permitting decision is at issue, only 'egregious official conduct can be said to be arbitrary in the constitutional sense': it must amount to an 'abuse of power' lacking any 'reasonable justification in the service of a legitimate governmental objective.'" Shanks v. Dressel, 540 F.3d 1082, 1088 (9th Cir. 2008) (quoting Lewis, 523 U.S. at 846). Legislative acts that do not impinge on fundamental rights or employ suspect classifications are presumed valid, and this presumption is overcome only by a "clear showing of arbitrariness and irrationality." Hodel v. Indiana, 452 U.S. 314, 331–32 (1981); see also Kadrmas v. Dickinson Public Schools, 487 U.S. 450, 462 (1988).

In a substantive due process challenge, the Ninth Circuit has instructed that courts should not require that the City's legislative acts actually advance its stated purposes, but instead look to whether "the governmental body could have had no legitimate reason for its decision." Levald, Inc. v. City of Palm Desert, 998 F.2d 680, 690 (9th Cir. 1993) (internal quotation marks omitted). The City's general plan or course of action does not violate substantive due process as long as it advances any legitimate public purpose, Construction Indus. Ass'n v. Petaluma, 522 F.2d 897, 906 (9th Cir. 1975), and if it is "at least fairly debatable" that the decision was rationally related to legitimate governmental interests, the City's actions must be upheld. Christensen v. Yolo County Bd. of Supervisors, 995 F.2d 161, 165 (9th Cir.1993) (citations omitted).

In accordance with these standards, the Court finds that Plaintiff has failed to put forth sufficient evidence suggesting that the City lacked any reasonable justification to deny the re-

roofing permits so as to withstand the Defendant's Motion for Summary Judgment. As noted, the City has at the very least a legitimate interest in issuing permits for projects that involve construction, renovation, and re-activation of habitability as a matter of public health and safety. Plaintiff failed to undergo Development Review, which, in accordance with the MVMC, the City had determined would be necessary so that Plaintiff could proceed with its renovation or re-habilitation projects. The City's actions included the following: meeting with Plaintiff's representatives regarding the proposed construction project, explaining to Plaintiff's representatives the process of Development Review, inspecting the subject property on several occasions, enumerating the property's health and safety deficiencies, and providing Plaintiff post-deprivation review in the form of an appeal before the City Council. These decisions based on these actions cannot be characterized as "arbitrary" or "irrational," nor do they "shock the conscience" of the Court.

With regard to the disconnection of the water service, the Court also finds no substantive due process violation. As noted, Plaintiff's requests to reconnect the water were denied time and time again because the City determined that the subject property was vacant and uninhabitable in accordance with City codes and regulations. The water was disconnected, the City suggests, because it was reconnected to the subject property in error. The Court concludes that this determination could have been related to the City's interest in regulating construction and renovation projects as a matter of public health and safety.

Plaintiff contends that the City's public-safety rationale was a mere pretext for what it asserts was the real reason behind the City's actions: to "recoup money and appease the neighbors who were objecting to the reopening of the Property to low income tenants." Pl.'s Opp'n to Mot. for Summ. J., at 9–10. Plaintiff, however, has not presented sufficient evidence to support this notion so as to withstand a summary judgment motion. The Court also notes that, contrary to Plaintiff's contention, consideration of community concerns vis-à-vis a proposed development project has been recognized as a legitimate rationale. See, e.g., Nelson v. City of Selma, 881 F.2d 836, 839 (9th Cir. 1989) ("The opposition of neighbors to a development project is also a

13
Case No.: 5:10-CV-04714 EJD
ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

legitimate factor in legislative decisionmaking."); Stubblefield Constr. Co. v. City of San Bernardino, 32 Cal. App. 4th 687 (1995) (holding that city councilmembers could—and in fact may be supposed to—take into consideration concerns voiced by their constituents about proposed construction projects in their vicinity). Moreover, and ultimately fatal to its contention of a pretext, Plaintiff has not presented any evidence that the City's actions were not based, at least in part, on a concern for public health and safety. As shown above, the City has presented sufficient evidence demonstrating that it was at least rational to conclude that allowing Plaintiff to proceed with its development plans would violate the municipal code and pose a health and safety risk. Plaintiff has not presented sufficient evidence to rebut this.

In addressing Plaintiff's substantive due process claim, the Court is "reluctant to minutely scrutinize the legislative processes of the City in the manner proposed by plaintiffs." Stubblefield, 32 Cal. App. 4th at 712. Since there is a rational basis for the City's decision, the Due Process Clause of the Fourteenth Amendment is not implicated by a "run of the mill dispute between a developer and a town planning agency, regardless of [the developer's] characterizations of it and of defendants' alleged mental states, to rise to the level of a due process violation." Id. The Court has not nor will not examine the utility of the City's legislative and administrative decisions; rather the Court has only determined that the City could have had legitimate reasons for those decision. See Levald, 998 F.2d at 690.

Accordingly, because the City's actions could have been rationally related to its legitimate interest in public health and safety, the Court finds that the City did not violate Plaintiff's substantive due process rights.

### 3.2 Equal Protection

The Court now turns to Defendant's Motion for Summary Judgment with regard to Plaintiff's Second Cause of Action: a claim of a violation of the Fourteenth Amendment's Equal Protection Clause. The Equal Protection Clause guarantees that "No state shall . . . deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1.

Plaintiff's Equal Protection claim is based on the "class of one" theory—that Plaintiff was singled out by the City and treated differently from other, similarly situated real estate developers. To succeed on this "class of one" claim, Plaintiff must demonstrate that the City intentionally treated Plaintiff differently than other similarly situated property owners, and did so without a rational basis. Gerhart v. Lake Cnty., Montana, 637 F.3d 1013, 1022 (9th Cir. 2011).

In support of its claim, Plaintiff points to the fact that the City issued building permits to the subsequent owner of the subject property, Bay West. This disparate treatment, Plaintiff argues, is sufficient for a prima facie Equal Protection claim. The Court disagrees. While Plaintiff and Bay West may be similarly situated parties, Plaintiff has failed to sufficiently show that they were treated differently. Bay West obtained approval of its renovation plans for the subject property through the City's Development Review process. See Def.'s RJN, Exs. E, F, G. As noted, the Development Review condition was also placed on Plaintiff's request for permits. Like Plaintiff, Bay West was not issued building permits without undergoing the Development Review process. Decl. of Randy Tsuda in Supp. of Reply to Pl.'s Opp'n ¶ 8 ("We did not issue any building permit to Bay West before City Council approved the Development Review permit."). Unlike Plaintiff, Bay West applied for Development Review, which was ultimately approved. Id. ¶ ("Once [Development Review] approval was obtained, we were able to issue a building permit to Bay West."). The City's denial of Plaintiff's permit application and granting Bay West's cannot be characterized as irrational or arbitrary.

Accordingly, the Court finds that Plaintiff has failed to present an Equal Protection claim sufficient to withstand a motion for summary judgment.

### 4. Conclusion and Order

For the aforementioned reasons Defendant's Motion for Summary Judgment is GRANTED in its entirety.

Since this Order effectively resolves this case, all previously-set deadlines and hearings, including the trial dates, are VACATED. Judgment shall be entered in favor of Defendant, and the clerk shall close this file.

**IT IS SO ORDERED.**

Dated: December 7, 2012



_____
EDWARD J. DAVILA
United States District Judge